NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ARTHUR POULOS, | : | |
| Plaintiff, | : | Civil No. 02-2250 (AET) |
| v. | : | MEMORANDUM & ORDER |
| JO ANNE B. BARNHART, Commissioner of Social Security, | : | |
| Defendant. | : | |

THOMPSON, U.S.D.J.

This matter comes before the Court on the appeal of Arthur Poulos ("Plaintiff") from a final administrative decision by Defendant Commissioner of the Social Security Administration ("Commissioner") to deny Plaintiff's claim for benefits under Title II and Title XVI of the Social Security Act.  This Court has jurisdiction to decide this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set forth below, the decision of the Commissioner will be affirmed.

BACKGROUND

On February 3, 2000, Plaintiff filed applications for Supplemental Security Income benefits (hereinafter "SSI") and disabled child's benefits (R. at 88 and 308.)[1]  Plaintiff alleged disability from birth based on morbid obesity with resulting pain in his knee and lower back, shortness of breath, chest pains, hypertension, and chronic ear infections.  (R. at 106, 115.)  Plaintiff's application was denied on October 6, 2000, and again on January 19, 2001, upon reconsideration.

---

[1] Unless otherwise noted, all page citations refer to the certified administrative record provided by the Defendant pursuant to Fed. R. Civ. P. 9.1.

(R. at 59 and 66.)

Thereafter, Plaintiff requested a hearing before an administrative law judge (hereinafter "ALJ"). (R. at 69.) The requested hearing was held on July 23, 2001. The testimony elicited during the hearing revealed that Plaintiff stands 5' 6" tall and weighs over 450 pounds. (R. at 40.) Plaintiff testified that his excessive weight causes several problems including pain in his knee when he is walking, and pain in his neck, shoulder and back. (R. at 42.) Plaintiff's weight also gives him trouble sleeping. (R. at 43.) It was further revealed that Plaintiff is a high school graduate possessing the ability to drive, but has nonetheless been unable to remain employed because of low productivity. (R. at 33, 34, 35.) Indeed, Plaintiff was placed in special education classes throughout his scholastic career. (R. at 34, 48.) Finally, it was revealed that Plaintiff takes medication to control hypertension. (R. at 37, 256.)

A review of Plaintiff's medical records indicates that Plaintiff has been obese his entire life and at an early age this obesity interfered with his motor skills. (R. at 170.) Plaintiff also has a history of earaches. (R. at 229-48.) On September 7, 2000, the New Jersey Department of Labor, Division of Disability Determination Services performed a psychological test upon the Plaintiff. (R. at 256.) The test indicated a twenty-four point difference between Plaintiff's verbal IQ and performance IQ. (R. at 257.) The examiner found this difference to be "consistent with neurological impairment." Id. These findings contradict a March 1999 physical examination in which a chiropractor found that Plaintiff had a normal gait, good muscle strength in all major muscle groups, and normal coordination. (R. at 303.)

Also in September of 2000, a State agency physician examined the Plaintiff and diagnosed Plaintiff with morbid obesity, hypertension, and right knee pain due to meniscal degeneration. (R.

at 57.) Notwithstanding this diagnosis, a second state agency physician concluded that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand for about six hours in an eight hour workday and sit for about six hours in an eight hour workday. (R. at 261.) In reaching this conclusion, the agency physician considered Plaintiff's age, history of obesity, complaints of pain in his knees, and the consultative examination performed on August 21, 2000 by agency physician Dr. Phillip Eatough. Id. On September 7, 2001, Dr. Fazal Panezai, an internist and cardiologist, concluded that due to his morbid obesity Plaintiff was totally "dysfunctional and disabled." (R. at 296.)

On January 19, 2002, the Commissioner ruled that Plaintiff was not entitled to child insurance benefits or supplemental security income payments under the Social Security Act. (R. at 27.) Plaintiff now appeals the commissioner's decision.

## DISCUSSION

I.   Standard of Review

A court applies plenary review to the Commissioner's application of law. Markle v. Bamhart, 324 F.3d 182, 187 (3d Cir. 2003). The Commissioner's findings of fact, however, are reviewed to determine "whether there is substantial evidence to support such findings." Id. A court is required to review the entire record when making those determinations. Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994) (citing Richardson v. Perales, 402 U .S. 389, 401 (1971)). The Court must confirm the Commissioner's decision where there is substantial evidence

supporting it. 42 U.S.C. §§ 405 (g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). The Commissioner's decision is afforded a great amount of deference; a court should not "set the decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

II.     Commissioner's Disability Analysis

Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A). An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is . . . unable to do his previous work . . . [and] cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id.

The Social Security Administration has promulgated a five-step evaluation process to determine whether an individual is disabled. See 20 C.F.R. § 404.1520; see generally Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). In step one, the Commissioner decides whether the claimant is currently engaging in substantial gainful activity. If so, the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(a). In step two, the Commissioner determines whether the claimant is suffering from a severe impairment. If the impairment is not "severe," the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(c). If the Commissioner finds that the claimant has a "severe" impairment in the second step he will move to step three. Id. In step three, the Commissioner determines whether the medical evidence indicates that the impairment is equivalent to an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. If so, the claimant

is automatically eligible for benefits.  In step four, the Commissioner reviews whether the claimant retains the "residual functional capacity" to perform his past relevant work.  "'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Hartranft, 181 F.3d at 359 n.1 (citing 20 C.F.R. § 404.1545(a)).  If a claimant can perform his past relevant work, he is not eligible for disability benefits.  20 C.F.R. § 404.1520(e).  Finally, in step five the Commissioner considers whether other work exists in significant numbers in the national economy that the claimant can perform given his medical impairments, age, education, past work experience, and residual functional capacity.  Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002) (citing Plummer, 186 F.3d at 428).  If there is such work, the claimant is not eligible for benefits.  20 C.F.R. § 404.1520(f).  In this final step, "the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in order to deny a claim of disability."  Plummer, 186 F.3d at 428.

    A.  Social Security Ruling 00-3p

On October 25, 1999, the Social Security Administration rescinded listing 9.09, obesity, from the listing of impairments.  See 64 Fed. Reg. 46,122 (Aug. 24, 1999) (codified at 20 C.F.R. pt. 404).  As such, the ALJ was required to makes specific findings at steps two and three with regard to obesity.  The commissioner thereafter published Social Security Ruling (hereinafter SSR) 00-3p, 65 Fed. Reg. 31,039 (May 15, 2000), to provided guidance on disability claims involving obesity.  "SSR 00-3p has since been superceded by SSR 02-1p without any substantive changes." Rutherford v. Barnhart, 399 F.3d 546, 552 n.4 (3d Cir. 2005).  Because SSR 00-3p was in effect at the time the ALJ made his decision, SSR 02-1p will not be retroactively applied.  See id; see also

Combs v. Comm'r of Soc. Sec., 400 F.3d 353, 358-59 (6th Cir. 2005) (citing Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988)).

SSR 00-3p provides guidance on how to address obesity in the Commissioner's five step analysis. At step two, obesity will constitute a severe impairment when "it significantly limits an individual's physical or mental ability to do basic work activities. (For children applying for disability under title XVI, we will find that obesity is a "severe" impairment when it causes more than a minimal functional limitation.)" 65 Fed. Reg. 31,039 (May 15, 2000). At step three of the analysis the Commissioner must determine if the claimant's obesity meets or equals the requirements of a listing, or if "there is an impairment, [or multiple impairments which,] in combination with obesity, meets the requirements of a listing." Id.

II. The Commissioner's Decision

The ALJ complied with the five step process promulgated by the Social Security Administration. In the first step the ALJ determined that Defendant had not engaged in substantial gainful activity since his alleged disability onset date, May 25, 1980. (R. at 26.) Next, the ALJ concluded that Plaintiff's combination of obesity, hypertension and right knee damage was a severe impairment under the statutory definition. (R. at 20.) At the third step, the ALJ did not find that the Plaintiff had any "impairment or combination of impairments that meets the criteria of any of the impairments listed in Appendix 1, Subpart P, Part 404, Title 20 of the Code of Federal Regulations." Id. The ALJ paid special attention to listing 1.03 (surgical arthrodesis of a major weight-bearing joint) and listing 4.03 (hypertensive cardiovascular disease). The ALJ bypassed the fourth step concerning past relevant work experience because Plaintiff "never worked . . . long enough to master any occupation. . . ." (R. at 25.)

The burden shifted to the Social Security Administration at the fifth step to prove that Plaintiff could perform other available work in the national economy. The ALJ found that the Plaintiff was a younger individual with a high school education whose residual functional capacity allows him to perform sedentary work. Id. In reducing Plaintiff's residual functional capacity from medium work to sedentary work, the ALJ considered Plaintiff's limitation on standing, walking and stooping. Id.

Plaintiff claims the decision below must be overturned because the ALJ failed to properly consider the evidence at steps two, three, and five. At step two Plaintiff claims the ALJ failed consider his neurological impairments as severe. "An impairment or combination of impairments is found 'not severe' . . . at [step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities)." Bowen v. Yuckert, 482 U.S. 137, 154 n.12 (1987). Here, the ALJ took into account Plaintiff's neurological impairments but found that they did not significantly affect Plaintiff's ability to perform basic work activities. (R. at 24-25.) The ALJ also noted that Plaintiff's verbal IQ and performance IQ were average. (R. at 25.) Therefore, the ALJ properly considered Plaintiff's neurological impairments.

Plaintiff claims that the ALJ also failed at step three to consider his obesity in combination with his other impairments. However, the ALJ issued a step three finding only after reviewing the objective medical evidence and stating the listing sections he considered. Specifically, the ALJ noted that Plaintiff's hypertension was controlled, that the results of an EKG revealed no

7

significant heart disease, and that Plaintiff had a full range of motion in his spine, hips, knees and ankles along with good muscle strength in all major groups. (R. at 19.) The ALJ compared Plaintiff's impairments to listing 1.03 (surgical arthrodesis of a major weight-bearing joint) and 4.03 (hypertensive cardiovascular disease), and found them not to be equivalent. After a review of the requirements of these listings with Plaintiff's medical records, it is clear that the ALJ's step three conclusion is supported by substantial evidence.

Finally, the Court finds that there is substantial evidence to support the ALJ's conclusion that Plaintiff maintains the residual functional capacity to perform sedentary work. The ALJ considered numerous medical records in rendering his decision, including records and treatment pages from Drs. Goldstein, Dudick, Panezai, Michel, and two psychologists. Furthermore, Plaintiff's hypertension is controlled with medication that has no side effects. (R. at 37.) Testimony indicates that Plaintiff regularly carried his niece, who weighed between forty and fifty pounds, while he baby-sat for her during the day. In sum, the ALJ found the Plaintiff's claims of functional limitation to be exaggerated. (R. at 24.) It is within the ALJ's discretion to evaluate the credibility of the Plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the full extent of such symptoms. See LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988). The ALJ's step five conclusion is supported by substantial evidence.

## CONCLUSION

For these reasons,

    It is on this 27th day of June, 2005

    ORDERED that the decision of the Commissioner is AFFIRMED; and it is further

ORDERED, that the case is CLOSED.

s/Anne E. Thompson
_____
ANNE E. THOMPSON, U.S.D.J.
